PUBLIC OPINION, Appellant,

v.

### CHAMBERSBURG AREA SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1994.

Decided Feb. 1, 1995.

J. McDowell Sharpe, for appellant.

Jan G. Sulcove, for appellee.

Before DOYLE and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Public Opinion, a local newspaper, appeals from an order of the Court of Common Pleas of Franklin County (trial court) sustaining the preliminary objections of the Chambersburg Area School District (School District) and dismissing the newspaper's Complaint.

On December 29, 1993, eight members of the School District's Board of Directors (Board) held a public meeting to fill a vacancy caused by the death of one of its members. The voting was done by means of a paper ballot that had been prepared in advance. Each director simply placed a mark

beside the name of the candidate of his or her choice. The Board appointed Penny Stoner, who received a majority of the votes cast on the second ballot. However, this voting procedure precluded members of the public from knowing for whom the individual directors voted.

On January 6, 1994, Public Opinion filed a Complaint in equity against the School District seeking a declaratory judgment setting aside Stoner's appointment as violative of the Sunshine Act[1] and the Public School Code of 1949[2] and, further, seeking to enjoin the Board from seating Stoner as a Board member until resolution of the issues raised in the Complaint.

On January 12, 1994, the School District filed preliminary objections in the nature of a demurrer seeking dismissal of the Complaint for failure to state a cause of action under the Sunshine Act or the Public School Code and, further, seeking dismissal of the Complaint as premature inasmuch as the Board had not yet sworn in Stoner. That same day, however, the Board held another public meeting and unanimously appointed Stoner, who was then sworn in as a member of the Board.

On January 20, 1994, the trial court denied Public Opinion's request for injunctive relief, concluding that the right to relief was not clear. Public Opinion did not appeal from the denial of its request for injunctive relief. The trial court subsequently sustained the School District's preliminary objections to Public Opinion's Complaint and dismissed the Complaint for mootness and for failure to state a cause of action under either the Sunshine Act or the Public School Code.

On appeal to this court,[3] Public Opinion argues that the trial court erred in sustaining the School District's preliminary objections because: (1) the Board's unanimous vote ratifying the secret ballot did not render the prior violation moot; (2) the Board's secret ballot to fill a vacancy on the Board did not comply with the requirement of the Sunshine Act that votes on official action be publicly cast; and (3) the Board could not appoint someone to fill a vacancy on the Board under the Public School Code without duly recording the votes.

## I. Mootness

Public Opinion argues that the trial court erred by dismissing its Complaint as moot. First, Public Opinion contends that it was improper for the trial court to take judicial notice of the Board's second public vote in reaching a conclusion on the School District's demurrer. Second, Public Opinion contends that even if the trial court properly took notice of this vote, the trial court should not have dismissed the Complaint for mootness because the case involves a question of public importance that could escape judicial review. The School District counters that the trial court properly took judicial notice of the second vote because it was part of the record, and the second vote cured the defect of the earlier vote and made this case moot.

■ We agree with the School District that the trial court could take judicial notice of the Board's second vote. "In ruling on a demurrer, a court may not consider factual matters not disclosed in the record...." 2 Goodrich–Amram 2d § 1017(b):29. However, here, the trial court had already taken judicial notice of the Board's second vote in deciding to deny Public Opinion's request for injunctive relief, a decision which Public Opinion did not appeal. Thus, the second

---

1. Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702.

3. When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer, our scope of review is limited to determining whether the trial court abused its discretion or committed an error of law. In determining whether to sustain preliminary objections in the nature of a demurrer, all well-pleaded facts and inferences which may be reasonably deduced therefrom must be accepted as true. Since the sustaining of a demurrer results in the denial of a claim or dismissal of a suit, it should be sustained only in cases that are clear and free from doubt. *Cumberland Publishers, Inc. v. Carlisle Area Board of School Directors*, 166 Pa.Commonwealth Ct. 176, 646 A.2d 69 (1994). A demurrer will not be sustained unless the complaint, on its face, fails to establish a cause of action. *Malia v. Monchak*, 116 Pa.Commonwealth Ct. 484, 543 A.2d 184 (1988).

vote was a factual matter disclosed in the record, and the trial court did not err by considering it in ruling on the demurrer.[4]

█ Nevertheless, accepting Public Opinion's alternative argument, we do not believe that the trial court should have dismissed Public Opinion's Complaint as moot. In *Cumberland Publishers, Inc. v. Carlisle Area Board of School Directors,* 166 Pa.Commonwealth Ct. 176, 646 A.2d 69 (1994), this court decided an issue similar to the matter presented here, even though it had been rendered moot. We stated:

Although we recognize that this matter is moot, we will decide it, because the question is one that is capable of being repeated and of continuing to escape review. *Strax v. Commonwealth,* 138 Pa.Commonwealth Ct. 368, 588 A.2d 87 (1991), affirmed per curiam, 530 Pa. 203, 607 A.2d 1075 (1992).

*Id.* at ——, 646 A.2d at 69 n. 1.[5] Likewise here, even though the issue is moot due to a curative second vote by the Board, we nevertheless address the matter because the situation is capable of being repeated and of continuing to escape review.

## II. A "resolution publicly cast?"

Section 5 of the Sunshine Act, 65 P.S. § 275 (emphasis added), states as follows:

In all meetings of agencies, the vote of each member who actually votes on any *resolution,* rule, order, regulation, ordinance or the setting of official policy *must be publicly cast* and, in the case of roll call votes, recorded.

Public Opinion, relying on the common and approved usage of the statutory language, contends that an appointment to fill a vacancy on the Board is a "resolution," and the secret ballot procedure utilized by the Board is the antithesis of "publicly cast." The School District, however, argues that an appointment to fill a vacancy on the Board is not a "resolution," and the votes, though not made known to the public, were "publicly cast" because they were made at a public meeting. We agree with Public Opinion.

█ The common and approved usage[6] of the term "resolution" is as follows:

[a] formal expression of the opinion or will of an official body . . . adopted by vote; as a legislative resolution.

Black's Law Dictionary 1178 (5th ed. 1979). In other words, a "resolution" is a proposal pertaining to some matter that is presented to an official body for consideration and, if adopted by vote, becomes the formal expression of the opinion or will of the official body on that matter. Here, the Board was presented with a ballot, prepared in advance, containing the names of candidates to fill the vacancy. In essence, each name represented a proposal that the individual so named be appointed to fill the vacancy. The Board adopted by vote the proposed appointing of

---

4. We also note that, even if the trial court had not already taken judicial notice of the Board's second vote, a court may make limited use of judicial notice in ruling on a demurrer. A court may take judicial notice of a fact which is indisputable and which the parties could reasonably raise in further pleadings or on argument at trial. 2 Goodrich–Amram § 1017(b):31. Here, the trial court took judicial notice of Public Opinion's own newspaper account of the Board's second vote. (Trial court op. at 6.) We believe that this precludes Public Opinion from disputing the fact that the Board took a second vote. Moreover, there is nothing to prevent the School District from raising the Board's second vote in further pleadings or on argument at trial. For these additional reasons, we believe that the trial court did not err by taking judicial notice of the Board's second vote.

5. Moreover, in *Consumers Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d

675 (1977), our Supreme Court declined to dismiss a procedural challenge to the appointment of an interim PUC commissioner as moot where the Governor appointed and the Senate confirmed two new PUC commissioners, thereby leaving no vacancies to fill. The Court stated that the question was capable of repetition and of sufficient public importance that it ought not to escape appellate review.

6. Section 3 of the Statutory Construction Act, 1 Pa.C.S. § 1903, states in pertinent part:

(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

Stoner to fill the vacancy. In this respect, the appointment of Stoner was in the nature of a "resolution."

■ In order to properly construe the meaning of the phrase "publicly cast," we will consider the legislative purpose of the Sunshine Act as stated therein: [7]

(a) **Findings.**—The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is *vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.*

(b) **Declarations.**—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act.

Section 2 of the Sunshine Act, 65 P.S. § 272 (emphasis added). The purpose of the Sunshine Act, then, is to ensure the public's right to witness the decision-making processes of agencies and thereby enable the public to effectively fulfill its role in a democratic society. In this role, the public holds its duly elected representatives, including school board directors, accountable for their actions through the ballot box. Therefore, a "publicly cast" vote must be one that informs the public of an elected official's position on a particular matter of business.

■ Here, the public witnessed members of the Board secretly marking paper ballots. If such secret votes were "publicly cast" in the sense urged by the School District, then the Board could conduct any official business in silence, secretly passing notes back and forth to one another until the directors reached a decision and, then, announcing the results of the deliberations to the "witnessing" public. The Sunshine Act did not intend

such a scenario. Indeed, such a procedure prevents the public from fulfilling its vital role in a democratic society because, unless informed of the vote cast by each director, the public cannot hold the Board members accountable for their actions. Because the vote on the resolution to appoint Stoner to fill the vacancy on the Board was not publicly cast, it violated section 5 of the Sunshine Act.

### III. "Recording of Appointment"

■ Section 315 of the Public School Code, 24 P.S. § 3–315, states in pertinent part:

In case any vacancy shall occur in any board of school directors by reason of death ..., the remaining members of the board of school directors shall, by a majority vote thereof, fill such vacancy from the qualified electors of the district within thirty (30) days thereafter.... [T]he person selected ... shall hold [her] office ... until the first Monday of December after the first municipal election occurring more than sixty (60) days after the vacancy shall have occurred. ....

Section 508 of the Public School Code, 24 P.S. § 5–508 (emphasis added), states in pertinent part:

The affirmative vote of a majority of all the members of the board of school directors in every school district, *duly recorded, showing how each member voted,* shall be required in order to take action on the following subjects:—

. . . .

Appointing tax collectors and *other appointees.*

. . . .

Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforcible [sic].

Public Opinion argues that the filling of a vacancy on the Board constitutes an appointment of an "other appointee" under section 508 of the Public School Code, and because the vote was not duly recorded, Stoner's

---

7. Section 3 of the Statutory Construction Act, 1 Pa.C.S. § 1921, states in pertinent part:

(a) The object of all interpretation and construction of statutes is to ascertain and effectu-

ate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

appointment was void. Public Opinion also maintains that *Mullen v. Board of School Directors of DuBois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969), holding that the requirements of section 508 of the Public School Code are not mandatory, is not applicable here. The School District contends that the filling of a vacancy on the Board is governed only by section 315 of the Public School Code and that, even if a board director is an "other appointee" under section 508 of the Public School Code, *Mullen* applies here.

In *Cumberland Publishers,* this court held that the filling of a vacancy on a school board under section 315 of the Public School Code is an "appointment" for purposes of section 8(a)(1) of the Sunshine Act, 65 P.S. § 278(a)(1) (a matter that may be discussed in executive session). In so holding, we relied upon the common and approved usage of the term "appointment," which is defined as

> [t]he selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the same. The term 'appointment' is to be distinguished from 'election.' 'Election' to office usually refers to vote of people, whereas 'appointment' relates to designation by some individual or group.

Black's Law Dictionary 91 (5th ed. 1979). Similarly here, the person designated by the Board to fill a vacancy under section 315 of the Public School Code has been "appointed" and, therefore, is an "other appointee."

Although it seems clear, then, that the Board violated section 508 of the Public School Code by failing to properly record how each member voted on the appointment of Stoner, the trial court determined otherwise because of our Supreme Court's holding in *Mullen.* We disagree with the trial court.

In *Mullen,* our Supreme Court considered whether a school board could declare the contract of a professional employee void because the board failed to record its vote on the contract as required by section 508 of the Public School Code. Mullen was a school teacher who had a fully executed employ-

ment contract and who had performed under that contract for over a year.[8] However, when Mullen became the union representative for his school building and began to make complaints to the principal and the superintendent, the board dismissed him, claiming that his contract was not valid because the board failed to record its vote as required by section 508 of the Public School Code.

The Court in *Mullen* held that where "[t]he overwhelming bulk of evidence ... indicates that the Board members did in fact approve" the contract of a professional employee, the requirement in section 508 of the Public School Code for a formal recorded vote is not mandatory but, rather, is directory only. *Mullen,* 436 Pa. at 216, 259 A.2d at 880. The Court explained that this result is consistent with the legislative policy of creating an atmosphere hospitable to school teachers and that any other result would allow a school board, at its whim, to avoid an otherwise valid contract by failing to record in its minutes the required vote. *Mullen.*

We believe that *Mullen* is easily distinguishable from this case. First, whereas *Mullen* involved a contract validity issue, there is no contract issue here. Second, the board in *Mullen* did not challenge the validity of Mullen's contract until Mullen had performed under the contract for over a year with the explicit consent of the Board. Thus, in *Mullen,* the Court considered whether the board should be estopped from denying the validity of Mullen's contract after getting the benefit of the bargain. None of this, of course, is relevant here. In this case, Public Opinion challenged the validity of Stoner's appointment by secret vote immediately after the vote was taken and before Stoner ever took office and performed in that capacity. The rationale of *Mullen* is simply not applicable to this situation. Thus, the Board violated section 508 of the Public School Code by failing to record how each member voted on the appointment of Stoner.

### IV. Conclusion

Because applicable law does not state with certainty that Complainant cannot prevail,

---

8. At one point, the board specially honored Mul-len for his achievements as a school teacher.

and because we must resolve any doubt in favor of overruling a demurrer, we conclude that the trial court erred in sustaining the School District's preliminary objections and dismissing Public Opinion's Complaint. Accordingly, we reverse the decision of the trial court and remand this case for further proceedings.

### ORDER

AND NOW, this 1st day of February, 1995, the order the Court of Common Pleas of Franklin County, dated March 29, 1994, is REVERSED, and this case is REMANDED for further proceedings.

Jurisdiction relinquished.