# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jerry Notarianni and Kim Yencho, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 733 C.D. 2016 |
| | : | Argued: March 6, 2017 |
| Patrick O'Malley, Laureen | : | |
| Cummings, John Brazil, John | : | |
| Cerra, Andy Wallace, Don | : | |
| Frederickson, Ed Staback, | : | |
| and Lackawanna County Salary Board | : | |

BEFORE: HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: April 12, 2017**

Jerry Notarianni (Notarianni), a member of the three-member Board of Commissioners of Lackawanna County (Board), and taxpayer Kim Yencho (collectively, Appellants), appeal the order of the Lackawanna County Court of Common Pleas (trial court)[1] denying mandatory preliminary injunctive relief seeking removal of certain county officials for improper appointments, and designation of Notarianni as "Minority Commissioner" entitled to his own solicitor. Appellants contend the appointments constitute official action under the Sunshine Act, 65 Pa. C.S. §§701-716, requiring a public meeting, and are improper attempts by a lame-duck board to bind a successor. Appellants assert preliminary injunctive relief is necessary to prevent irreparable harm during the pendency of the litigation.

---

[1] Because the Lackawanna County bench recused, Kenneth W. Seamans, S.J. of the Susquehanna County Court of Common Pleas presided.

Discerning reasonable grounds for the trial court's order, we affirm.

## I. Background
## A. Material Facts

Lackawanna County (County) retained the County Commissioner form of government when it adopted its Home Rule Charter (Charter) in 1976. Reproduced Record (R.R.) at 406a-432a. Pursuant to the Charter, the Board is comprised of three county commissioners, elected in odd-numbered years and every fourth year thereafter. Electors may vote for no more than two candidates.

In 2015, the Board was comprised of two Democrats, Corey O'Brien and James Wansacz, and one Republican, Patrick O'Malley. In early 2015, O'Malley changed his registration from Republican to Democrat. Then, O'Brien resigned, and Democrat Ed Staback was appointed to complete his term. Through the remainder of 2015, until the newly elected commissioners took office, Commissioners Staback (D), O'Malley (D) and Wansacz (D) comprised the Board (2015 Board or Lame-duck Board).

In the 2015 election for County Commissioners, O'Malley ran for re-election, and Notarianni also ran as a Democrat. Laureen Cummings successfully ran as a Republican candidate. As a result of the election, the current Board is comprised of Commissioners O'Malley and Notarianni as Democrats, and Cummings as a Republican (Current Board). Commissioner O'Malley was the only Commissioner remaining from the 2015 Board after the election.

Before the Current Board assumed office on January 4, 2016, Don Frederickson served as County Solicitor, and John Brazil served as an assistant solicitor. After the 2015 election, Frederickson advised O'Malley he no longer wanted to serve as County Solicitor. Then-Commissioner Staback of the lame-duck Board, executed a hiring form, which Commissioner O'Malley also signed, appointing Brazil as County Solicitor. Pursuant to their written approval, Brazil was to start on December 29, 2015, before the Current Board took office. Brazil then named Frederickson an assistant solicitor.

The Board did not appoint a County Solicitor at the reorganization meeting held after the Current Board's installation on January 4, 2016. Also, the position of Chief Clerk was not filled at the reorganization meeting. Subsequent to assuming office, Commissioners O'Malley and Cummings approved the appointment of Andy Wallace to serve as Chief Clerk, by signing a hiring form.

As sole Republican commissioner, Cummings appointed John Cerra as Minority Solicitor. The County consistently construed the term Minority Commissioner in the Charter as meaning the member of the minority party.

Historically, the County made appointments to county positions by obtaining written assent of two of the three Commissioners on a hiring form. See Tr. Ct., Slip Op., 4/6/16, Finding of Fact (F.F.) No. 28. The County consistently followed this long-standing practice for solicitorships and other hires. The Board does not vote on hires or appointments at public meetings, believing such executive functions are not subject to public meeting requirements. F.F. No. 15.

**B. Procedural History**

In January 2016, Appellants filed a two-count complaint against Appellees, comprised of: two members of the Current Board, (Democrat O'Malley and Republican Cummings); outgoing Commissioner Staback; certain county officials (County Solicitor Brazil, Assistant Solicitor Frederickson, Minority Solicitor Cerra, and Chief Clerk Wallace) (collectively, County Officials); and, the Lackawanna County Salary Board (Salary Board). The pleadings allude to backroom politics, deceptive behavior, secret deals, and appointments made in violation of public meeting requirements.

In Count I for Injunctive Relief, Appellants alleged the County Officials' appointments violate the Sunshine Act, the County Charter, and the prohibition against "lame-duck" commitments. Alleging that the remedy under the Sunshine Act is injunctive relief, that there is no adequate remedy at law, and that continued service by County Officials will cause irreparable harm, Appellants requested the trial court remove County Officials from their positions.

In Count II for Declaratory Judgment and Mandatory Injunction, Appellants sought a declaration that County Officials' appointments are improper and, thus, void. Appellants also asked the trial court to declare Notarianni the Minority Commissioner with the right to appoint a Minority Solicitor, and to direct the Salary Board to fund the Minority Solicitor that Notarianni appoints.

In January 2016, Appellants also filed the petition for injunctive relief, mandatory injunction and declaratory judgment at issue here (Petition). Therein,

Appellants alleged there is no adequate remedy at law and that County Officials' continued service causes irreparable harm. As to Notarianni they assert:

> [S]ince Mr. O'Malley [D] and Ms. Cummings [R] have aligned themselves to assume the Majority role, Mr. Notarianni [D] must be deemed the Minority Commissioner so that he [may] be granted the opportunity to appoint his own solicitor under the … Home Rule Charter and so that he may serve as a true 'watchdog' for the taxpayers of Lackawanna County.

Appellants' Br. at 11; Reproduced Record (R.R.) at 67a.

After holding a hearing on the Petition, in April 2016, the trial court denied Appellants' requested relief. In its 30-plus page opinion, the trial court made 80 findings of fact. It reasoned that Appellants did not show irreparable harm in allowing County Officials to continue their service, and it determined their removal "would cause much greater harm than good [because] [a]ll positions render important services to the [Board] and to the citizens of Lackawanna County." Tr. Ct., Slip Op. at 33 (unnumbered). The trial court emphasized it was "compelled to point out that each one of these [County Officials] were agreed upon by hire by two of the then serving [Board] - a majority" in that two of the three sitting commissioners agreed to the hires. Id.

As to Appellants' claim that appointments made outside a public meeting are void, the trial court noted that County employment decisions do not qualify as "official action" under the Sunshine Act, based on Maloney v. Lackawanna County Commissioners (C.P. Lackawanna, No. 2004 Civil 339, filed February 18, 2004), 2004 WL 5175141. This Court affirmed, adopting the trial

5

court's "comprehensive opinion." Maloney v. Lackawanna Cnty. Comm'rs (Pa. Cmwlth., No. 633 C.D. 2004, filed October 6, 2004) (unreported), Slip Op. at 4.

As to the Minority Commissioner claim, the trial court explained the historical construction of that term in the Charter referred to the minority party. Accordingly, Notarianni, as one of two Democrats on the Board, did not qualify.

Appellants appealed the denial of preliminary injunctive relief.[2]

## II. Discussion

Appellants seek mandatory relief to: (1) remove County Officials because they were appointed outside a public meeting in violation of the Sunshine Act and the Charter, and as to the Chief Solicitor and his assistants, by a lame-duck Board; and, (2) declare Notarianni as the "Minority Commissioner" based on a voting bloc of the other two commissioners in appointing officials that Appellants seek to remove. Appellants claim the County Officials' appointments are void, and constitute irreparable harm as violations of law. Appellants contend a preliminary injunction is necessary to protect the public's trust in government. With regard to their Minority Commissioner claim, they assert Notarianni's designation is necessary to serve the needs of his constituents.

---

[2] Appellees also filed preliminary objections, which the trial court sustained in part and overruled in part in July 2016. The trial court dismissed the claims seeking removal of County Officials from office, holding a *quo warranto* proceeding offers the exclusive remedy. The trial court overruled the preliminary objections to the Minority Commissioner claims. Thus, Appellees filed an answer.

## A. Legal Standards

In order to obtain preliminary injunctive relief, Appellants must establish six prerequisites as to both the improper appointment/removal claim *and* the Minority Commissioner claim. The six elements are: (1) a clear right to relief; (2) immediate and irreparable harm in the absence of an injunction; (3) restoration of the status quo; (4) no adequate remedy at law exists and the injunction is appropriate to abate the alleged harm; (5) greater injury will result by not granting than by granting the injunction; and, (6) the preliminary injunction will not adversely affect the public interest. Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995 (Pa. 2003). The absence of any one of the six prerequisites is grounds to deny injunctive relief. Lee Publ'ns, Inc. v. Dickinson Sch. of Law, 848 A.2d 178 (Pa. Cmwlth.) (en banc), appeal denied, 857 A.2d 675 (Pa. 2004) (Sunshine Act context).

When reviewing a trial court's order as to a preliminary injunction, "appellate courts must engage in a review of the record and provide some discussion of the reasons for reversing a trial court's order granting or denying a preliminary injunction …." Reed v. Harrisburg City Council, 927 A.2d 698, 705 (Pa. Cmwlth. 2007). Our "review is limited to determining whether the record demonstrates any apparently reasonable grounds to support the trial court's decision." Id. (emphasis added); see also Giant Eagle Mkts. Co. v. United Food & Commercial Workers Union, 652 A.2d 1286 (Pa. 1995). Stated differently, "[o]ur review of a trial court['s] order is limited to examining the record for an abuse of discretion." Watts v. Manheim Twp. Sch. Dist., 84 A.3d 378, 391 (Pa. Cmwlth. 2014), aff'd, 121 A.3d 964 (Pa. 2015). We do not inquire into the merits. Id.

7

Further, in commanding the performance of an affirmative act, a mandatory injunction "is the rarest form of injunctive relief" and an extreme remedy. Wyland v. W. Shore Sch. Dist., 52 A.3d 572, 583 (Pa. Cmwlth. 2012). Because mandatory injunctions are issued more sparingly than prohibitory injunctions, Mazzi v. Commonwealth, 432 A.2d 985 (Pa. 1981), courts apply greater scrutiny. Purcell v. Milton Hershey Sch. Alumni Ass'n, 884 A.2d 372 (Pa. Cmwlth. 2005). Accordingly, "[t]he case for a mandatory injunction must be made by a very strong showing, one stronger than required for a restraining-type injunction." Wyland, 52 A.3d at 582. However, "[w]hile the standard is greater for a mandatory injunction, the primary elements of clear right, irreparable harm, retaining the status quo and preventing greater injury are the same …." Id. at 583.

Here, the relief Appellants request is both preliminary and mandatory: (1) removal of County Officials as improper appointees; and, (2) designation of Notarianni as Minority Commissioner so he may appoint the Minority Solicitor.

**B. Likelihood of Success**

As the moving party, Appellants must establish a clear right to relief. However, in terms of an injunction, Appellants need not prove the elements of the underlying claim to show a reasonable likelihood of success on the merits. SEIU Healthcare Pa. v. Commonwealth, 104 A.3d 495 (Pa. 2014). Our Supreme Court explained that where the other elements for a preliminary injunction are shown, a moving party "need only demonstrate that substantial legal questions must be resolved to determine the rights of the parties." Id. at 505 (emphasis added) (citing Fischer v. Dep't of Pub. Welfare, 439 A.2d 1172 (Pa. 1982)).

8

## 1. Alleged Improper Appointments

Appellants challenge the legality of the following appointments: Brazil as County Solicitor, and his naming of Frederickson as assistant solicitor; Wallace as Chief Clerk; and, Cerra as Minority Solicitor. Appellants assert the Sunshine Act requires public meetings for appointments of high-ranking county officials. They argue the written assent for appointment amounts to a vote that qualifies as official action under the statute and the Charter. Because County Officials were not appointed during a public meeting, Appellants contend their appointments are void, mandating their removal from office.

Appellees maintain that neither the Charter nor the Sunshine Act expressly requires hiring decisions to be made at public meetings. In addition, Appellees cite Maloney to support the trial court's analysis of the Sunshine Act.

### a. Public Meeting Requirement

There is no dispute that County Officials' appointments were effected by written assent of two commissioners on a hiring form, outside a public meeting. Appellants assert this lack of openness is grounds to void their appointments, and remove them from office.

The Sunshine Act upholds "the right of the public … to witness the deliberation, policy formation and decision[-]making of agencies [as such is] vital to the enhancement and proper functioning of the democratic process." 65 Pa. C.S. §702. It confers a right on citizens "to attend all meetings of agencies at which any agency business is discussed or acted upon …." Id.

9

To that end, with certain exceptions, the Sunshine Act requires an agency to conduct "official action and deliberations by a quorum … at a meeting open to the public." 65 Pa. C.S. §704. "Official action" is defined as:

> (1) Recommendations made by an agency pursuant to statute, ordinance or executive order.
>
> (2) The establishment of policy by an agency.
>
> (3) The <u>decisions on agency business</u> made by an agency.
>
> (4) <u>The vote taken by any agency</u> on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

65 Pa. C.S. §703 (emphasis added).

There is no provision contained in the Sunshine Act that specifies the hiring or appointment of a county employee constitutes "official action." <u>Id.</u>

Like the Sunshine Act, the Charter requires all Board meetings to be open to the public. Charter, §1.3-304. Section 1.3-302(j) of the Charter grants the Board the power "to appoint or confirm, as the case may be, officers and employees as provided by [the] Charter, by ordinance or state law." R.R. at 411a. One such appointment is that of County Solicitor, who in turn, appoints assistant solicitors. Charter, §1.15-1503(a); R.R. at 427a. The method of appointment, including the necessity for a meeting, is unspecified.

Appellants contend the public meeting provisions in both the Charter and the Sunshine Act require appointments to occur during a public meeting. They

10

argue the trial court committed an error of law in determining the hiring of county employees is not official action subject to the Sunshine Act. Specifically, they assert "[Appellees] violated the Sunshine Act when they did not return to a public meeting to vote" on the appointments. Appellants' Br. at 9-10.

In determining that the hiring of county employees is not official action under the Sunshine Act, the trial court relied on Maloney. In Maloney, the trial court denied a petition for injunctive relief of county employees alleging the Board illegally terminated their employment, and held the Sunshine Act did not apply to their terminations. The trial court distinguished between policy-making or legislative decisions, which require openness, and executive or administrative decisions, such as those relating to an individual's competence, which do not.

This Court affirmed the trial court's decision in Maloney, holding that the termination of County employees did not qualify as official action, and so did not require a public meeting for validity. This Court's adoption of the trial court's reasoning in Maloney, that local government would be paralyzed by the need to undertake all hiring and firing of County employees at public meetings, is sound and offers reasonable grounds to uphold the trial court's order denying relief here.

However, Appellants contend Maloney does not apply because the courts did not consider the vote component of Section 703(4) of the Sunshine Act, 65 Pa. C.S. §703(4). Official action only includes votes on "any motion, proposal, resolution, rule, regulation, ordinance, report or order." Id. Appellants cite nothing to indicate an appointment fits within one of those submissions.

11

Significantly, Appellants challenge the lack of a vote as to the appointments in a public meeting, not the discussion leading to the appointments. The Sunshine Act permits discussion of personnel matters outside public view, in executive session. 65 Pa. C.S. §708(a)(1);[3] Dusman v. Bd. of Dirs. of Chambersburg Area Sch. Dist., 123 A.3d 354 (Pa. Cmwlth. 2015). Such matters expressly include appointments.[4] Further, to the extent a public vote is required to validate the appointments, that flaw may be cured by conducting the vote in a public meeting. Smith v. Twp. of Richmond, 82 A.3d 407 (Pa. 2013).

Appellants emphasize that the appointments require two written assents of the Commissioners under the Charter; these assents qualify as "votes." Yet, Appellants identify no legal support for their contention that a written assent is equal to a vote, and the Charter does not so specify. Further, "votes" must occur at public meetings only when they pertain to certain submissions like motions and resolutions. Thus, while the claim is colorable, their right is less than clear.

---

[3] An agency may hold an executive session, closed to the public, "to discuss any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of performance, promotion, or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the agency, or former public officer or employee…" 65 Pa. C.S. §708(a)(1).

[4] We distinguished between an appointment and an election, connoting a vote, in Public Opinion v. Chambersburg Area School District, 654 A.2d 284 (Pa. Cmwlth. 1995). Applying its common usage, we defined "appointment" as:

> [t]he selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the same. The term 'appointment' is to be distinguished from 'election.' 'Election' to office usually refers to vote of people, whereas 'appointment' relates to designation by some individual or group.

Id. at 289 (citing BLACK'S LAW DICTIONARY 91 (5th ed. 1979)).

12

Moreover, the trial court recognized that it has been a long-standing practice to carry out county appointments by the written assent of at least two board members on forms usually generated by the personnel office. In that regard, the trial court determined, even if there was a violation of the Sunshine Act, the law did not require it to set aside the appointments at issue because the decision as to invalidating action at an unauthorized meeting was within its discretion. See 65 Pa. C.S. §713 (providing as to business transacted at an unauthorized meeting that, "[s]hould the court determine that the meeting did not meet the requirements of this chapter, it may in its discretion find that any or all official action taken at the meeting shall be invalid.").

Appellants also suggest the appointment of "higher ranking officials," like County Officials, must take place in a public meeting, because that qualifies as official action. However, they cite no case law in support. Cf. Taylor v. Borough Council Emmaus Borough, 721 A.2d 388 (Pa. Cmwlth. 1998) (stating in *dicta*, that after closed investigation, the act of firing employee would constitute official action).

Case law holding that hires of high-ranking officials need to occur in a public meeting is limited to the hiring of superintendents of school districts. Further, the analysis turned on the fact that the agencies involved were school districts subject to the Public School Code of 1949,[5] and the hires at issue had contracts. See Preston v. Saucon Valley Sch. Dist., 666 A.2d 1120 (Pa. Cmwlth. 1995); Morning Call v. Bd. of Sch. Dirs., 642 A.2d 619 (Pa. Cmwlth. 1994).

---

[5] Act of March 10, 1949. P.L. 30, as amended, 24 P.S. §§1-101–27-2702. Section 508 of the Public School Code, 24 P.S. §5-508, presupposed that when entering a contract of any kind, the school board would vote at a public meeting.

13

Relevant here, in Preston, this Court reasoned that the vote on a superintendent's contract and salary increase needed to occur in a public meeting. However, in addition to Section 508 of the Public School Code, we held the hiring of a superintendent constituted official action under the Sunshine Act (then 65 P.S. §278).[6] Out of context, Preston may support that, to be valid, a hiring decision of a high-ranking official must occur in a public meeting. In context, it matters that a superintendent is hired by contract that requires a vote at a public meeting for approval. Entering a contract is a decision on agency business, i.e., official action.

The essence of official action is its connection to agency business. The Sunshine Act defines "agency business" as: "[1] the framing, preparation, making or enactment of laws, policy or regulations[;] [2] the creation of liability by contract or otherwise[;] or [3] the adjudication of rights, duties and responsibilities, but not including administrative action." 65 Pa. C.S. §703. "Administrative action" is defined as: "[t]he execution of policies relating to persons or things as previously authorized or required by official action of the agency adopted at an open meeting of the agency[,] … not [including] the deliberation of agency business." Id.

In sum, cases holding that hires by contract constitute official action do not necessarily apply to hires by appointment. Nor do they hold that all hires are official actions requiring a vote. Agency business expressly includes contracts as a basis for official action, whereas appointments of County Officials, all of whom are at-will, do not fall neatly within any of the three categories.

---

[6] Section 8 of the Sunshine Act of 1986, Act of July 3, 1986, P.L. 388, repealed by, Act of October 15, 1998, P.L. 729.

14

Arguably, appellate authority is split as to whether hiring and firing decisions must be approved by a vote in a public meeting. Compare Maloney with Morning Call and Preston. Thus, we are not persuaded that Appellants established a likelihood of success on the merits as to a violation of the Sunshine Act.

**b. Lame-Duck Appointees**

Appellants also argue a predecessor board may not bind its successor, under the precedent established in Lobolito, Inc. v. North Pocono School District, 755 A.2d 1287 (Pa. 2000). In Lobolito, our Supreme Court determined that an agreement to build a new school, entered by a school board at the expiration of its term, did not bind the successor board. The Court reasoned that a lame-duck board "cannot enter into a contract which will extend beyond the term for which the members of the body were elected." Id. at 1289.

This Court extended this prohibition against binding successors to the employment context in Borough of Pitcairn v. Westwood, 848 A.2d 158 (Pa. Cmwlth. 2004). There, we reasoned an appointment of a police chief encompasses a governmental function. Thus, the governing body's attempt to bind a successor body was unenforceable and contrary to public policy. Significantly, we held the appointment was illegal from the outset, and so voided the employment contract.

The prohibition against a lame-duck body making an eleventh-hour appointment is predicated on the binding nature of the decision on a successor body. Appellants cite no case law expanding this principle to at-will employees.

15

Here, the only appointment challenged on lame-duck grounds is that of County Solicitor, who then selects assistant solicitors. When appointed to start on December 29, 2015, John Brazil was already serving with Don Frederickson as an assistant solicitor. The lame-duck appointment substituted Brazil for Frederickson as County Solicitor, and moved Frederickson to assistant solicitor. At the reorganization meeting held on January 4, 2016, following the installation of the new Commissioners, no appointment of County Solicitor was held.

Appellants' argument that <u>Lobolito</u> offers grounds to invalidate the Solicitor's appointment as a lame-duck attempt to bind a successor board is unpersuasive. Appointees, per the County Code, are subject to removal by the appointing authority at-will. 16 P.S. §450(b).[7] Unlike a contract, appointments to at-will positions do not have binding effect. Regardless, under <u>Lobolito</u>, a successor board is free to rescind a contract when it was entered by a lame-duck predecessor.

Though not cited by Appellants, this Court held lame-duck appointments to non-vacant positions are invalid in <u>Ross Township v. Menhorn</u>, 588 A.2d 1347 (Pa. Cmwlth. 1991). There, six days before the organizational meeting of the new board, the lame-duck board met and appointed individuals to certain positions, which were to become effective the day before the organizational meeting, because no vacancies existed until then. At the organizational meeting, the new board rescinded the lame-duck appointments and replaced the appointees. The new appointees commenced an action in *quo warranto*, seeking a declaration as to the rightful office holders. The trial court dismissed the action as to two

_____

[7] Act of August 9, 1955, P.L. 323, <u>as</u> <u>amended</u>, 16 P.S. §450(b).

16

lame-duck appointments based on "well settled past practices" since 1969. Id. at 1349. This Court reversed, reasoning: "Appointments to public positions … where no vacancies existed are invalid, regardless of the past practices of the local municipality because an incumbent governing body lacks the power to appoint to positions where vacancies will not occur until after [its] term in office expires." Id. Thus, the start date and whether there was a vacant position at the time of the appointment is relevant.

Here, County Solicitor Brazil and assistant solicitor Frederickson started while the Lame-duck Board remained in office, and before the Current Board assumed office. Frederickson asked to be replaced as County Solicitor. Further, after assuming office, the Current Board had an opportunity to make their own appointments at the reorganization meeting. Moreover, Appellants acknowledge the County Officials here serve at-will appointments, and so are not binding on the Current Board. The applicability of Lobolito is contingent on a lame-duck body creating long-term obligations, circumstances which are not present here.

### 2. Minority Commissioner

Asserting that Commissioners O'Malley (D) and Cummings (R) have aligned themselves so as to assume the majority role, Notarianni (D) asks to be deemed the Minority Commissioner based on their voting alliance. As a result, he claims that as Minority Commissioner, he is entitled to appoint his own solicitor, the Minority Solicitor, pursuant to the applicable provisions of the Charter. He also argues the Salary Board is required to fund the Minority Solicitor he appoints.

17

The trial court rejected Democrat Notarianni's assertion that he should be appointed Minority Commissioner. It reasoned that Commissioner Cummings (R), as Commissioner of the minority party, was the Minority Commissioner. Therefore, she had the right under the Charter to designate an assistant solicitor to give her legal advice. She appointed a Minority Solicitor pursuant to the Board's long-standing hiring practice. In addition, the trial court observed that the only indicia of any political alignment between Commissioners O'Malley and Cummings were the two appointment actions they undertook, which the court concluded did not render Notarianni a *de facto* Minority Commissioner.

Despite the County's long-standing, consistent practice of designating the commissioner of the minority party as the Minority Commissioner, Appellants proffer an alternate interpretation. Citing the Pennsylvania Manual for County Commissioners[8] in support, Appellants maintain the majority/minority role "is not determined exclusively by party." Manual (4th ed., Aug. 2015) at 8. Rather, that role may correspond to personality and personal philosophy that dictate voting blocs.

Our state Constitution does not address Minority Commissioner status. Notably, Article 9, section 4, "County government," does not mention a minority solicitor or commissioner. It merely provides: "Three county commissioners shall be elected in each county. In the election of these officers each qualified elector shall vote for no more than two persons, and the three persons receiving the highest number of votes shall be elected." PA. CONST., art. IX, §4.

---

[8] Although the Manual is not in the record, it is publicly available. However, it focuses on the role as aligned with the minority party, stating the nominating and election mechanism assures each party has minority party representation.

The sole authority for a minority solicitor in the present case is Section 1.15-1503 of the Charter, entitled "Legal Services." It states in pertinent part:

> The Board of County Commissioners shall appoint a County Solicitor who shall be the chief legal officer and attorney for the County government except for those elected offices already authorized a Solicitor. The County Solicitor shall appoint assistant solicitors in such numbers and at such salaries as shall be fixed by the Salary Board. One of these assistant solicitors shall be designated solely to give legal advice to the Minority County Commissioners, and shall be the appointment of the Minority Commissioner.

R.R. at 427a (emphasis added). This provision does not show Appellants have a clear right to relief.

In part, Appellants claim Notarianni should be named Minority Commissioner because denying him counsel through the Minority Solicitor denies "the voters who overwhelmingly selected [him] [their] ability to govern with the benefit of competent[,] trustworthy legal counsel." Appellants' Br. at 20. Thus, his claim is predicated on serving those who voted for him, and whose interests are being marginalized because he is the Minority Commissioner and majority rules.

Although there are no decisions on point as to the meaning of "Minority Commissioner," our Supreme Court addressed the import of a county commissioner's party designation in Commonwealth ex rel. Teller v. Jennings, 186 A.2d 916 (Pa. 1963). There, our Supreme Court affirmed a trial court's dismissal of a district attorney's *quo warranto* action seeking a declaration that a county commissioner forfeited his right to office when he changed his party affiliation after

19

being elected. The <u>Jennings</u> Court observed the purpose of the state constitution provision[9] dealing with the election of county commissioners was to encourage the *initial* representation of both major political parties. Once assuming office, a commissioner became the representative of *all* his constituents, "and not merely those who voted for him or happen to belong to his political party." <u>Id.</u> at 918.

We agree with Appellants that there is no requirement that the "Minority Commissioner" correspond to the commissioner affiliated with the minority party. Because commissioners may switch parties, or run as independents, the Board may not be comprised of a clear majority and minority by party. Indeed, the 2015 Board was comprised entirely of Democrats.

Because there is no definition of the term "Minority Commissioner," or case law construing same, the term is open to determination. Here, Appellants offer a reasonable construction of "Minority Commissioner" as one who is consistently in the minority, and out-voted by two-to-one, based on a voting bloc. That said, Appellants did not establish Notarianni's Minority Commissioner status based on a voting bloc on this record. At best, the alleged voting alliance is comprised of two decisions to make two appointments, which may or may not have been in concert. To the contrary, Cummings exercised independent judgment in appointing Wallace. F.F. No. 74. To construe the term by reference to a voting bloc with no showing of an alliance, would subject the status of Minority Commissioner to constant change, potentially on a vote-by-vote basis.

---

[9] Then article 14, Section 7 of the Pennsylvania Constitution is substantively the same as the current provision on County government, in article 9, Section 4.

20

In short, the trial court did not abuse its discretion in determining two appointments were insufficient to show a voting bloc that would render Notarianni forever in the minority, such that he and his constituents would be disadvantaged without specially designated counsel. Thus, Notarianni did not establish he qualified as Minority Commissioner under the Charter so as to have a clear legal right to appoint the Minority Solicitor.

## C. Remaining Elements for Injunctive Relief

Appellants were required to establish five prerequisites for preliminary injunctive relief, in addition to a clear right, or substantial legal question as to respective rights. SEIU Healthcare.

As to irreparable harm, this Court holds "[f]ailure to comply with an open government statute is sufficiently injurious to constitute irreparable harm." Grine v. Cnty. of Centre, 138 A.3d 88, 101 (Pa. Cmwlth. 2016) (en banc) (citing Patriot-News Co. v. Empowerment Team of Harrisburg Sch. Dist. Members, 763 A.2d 539 (Pa. Cmwlth. 2000) (injunction granted to prevent Sunshine Act violation)); see also SEIU Healthcare, 104 A.3d at 508 ("when conduct sought to be restrained violates a statutory mandate, irreparable injury will have been established.").

However, the alleged statutory mandate under the Sunshine Act that hiring or appointment actions constitute official action is less than clear. At best, there is a substantial legal question as to the requirement of a public meeting for hiring decisions or filling non-elected vacancies, such that irreparable harm is not

21

established from a statutory violation.  Appellants articulated no irreparable harm other than violating a non-express public meeting requirement.

Nonetheless, presuming Appellees violated the Sunshine Act by not appointing the County Officials in a public meeting, which statutory violation constitutes irreparable harm, Appellants must meet four other prerequisites for preliminary injunctive relief.  This includes a requirement that denial of injunctive relief would cause greater harm than granting it.  The trial court concluded the harms favored denying injunctive relief because removing the County Officials and creating vacancies would cause greater harm than letting the appointments stand.  Tr. Ct., Slip Op. at 33.  In support, the trial court noted Brazil served as an assistant solicitor under Frederickson.  Notarianni admitted Frederickson's competence as a solicitor, and he offered no basis to believe that Brazil and Frederickson do not serve his interests.

Moreover, the harm Appellants allege to the public trust is speculative. Speculative harm is legally insufficient to support a preliminary injunction.  Summit Towne Centre; Reed.  The harm as articulated reflects Notarianni's self-interest as opposed to that of his constituents, who are not limited to his supporters.  Jennings.

In addition, Appellants seek to alter the status quo, not maintain it. Notarianni did not have a Minority Solicitor, and the other solicitorships he challenges were in place before he took office.  To remove the appointees would void the actions of a majority of the Current Board, in favor of one commissioner.

22

### III. Conclusion

Because Appellants did not establish all six prerequisites to injunctive relief as to either their improper appointment or Minority Commissioner claims, and there are reasonable grounds to support the trial court's denial of the preliminary injunctive relief[10] sought, we affirm the trial court's order.

ROBERT SIMPSON, Judge

Judge Hearthway did not participate in the decision in this case.

---

[10] Appellees also argued this Court should dismiss the appeal, except as to the surviving Minority Commissioner claim, because the trial court dismissed the counts relating to improper appointments. We decline to dismiss the action because this case involves matters of open government that are important to the public, capable of repetition, and yet evading review. Public Defender's Office of Venango Cnty. v. Venango Cnty. Ct. of Common Pleas, 893 A.2d 1275 (Pa. 2006).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerry Notarianni and Kim Yencho, :
                              Appellants :
                                        :
                v.                      :    No. 733 C.D. 2016
                                        :
Patrick O'Malley, Laureen              :
Cummings, John Brazil, John            :
Cerra, Andy Wallace, Don               :
Frederickson, Ed Staback,              :
and Lackawanna County Salary Board     :

## **O R D E R**

**AND NOW**, this 12th day of April, 2017, the order of the Lackawanna County Court of Common Pleas is **AFFIRMED**.

ROBERT SIMPSON, Judge