Milton **PURCELL, Ethel Campbell, Graham McIntyre, Ivan Dietrich, Ralph Fink, Harvey Deitrich, Girard Gaughan, Harry Heath, Robert Patton, Gerald Long, Junior Via, Richard Mattis, Christine Cook and Robert Heist**

v.

**MILTON HERSHEY SCHOOL ALUMNI ASSOCIATION, John Rice and Jerry Waters, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 2005.

Decided Oct. 7, 2005.

---

Victor P. Stabile, Harrisburg, PA, and F. Frederic Fouad, New York, NY, for appellants.

Allen C. Warshaw, Harrisburg, PA, for appellees.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

The Milton Hershey School Alumni Association, John Rice and Jerry Waters (collectively, the Incumbent Board), appeal from an order of the Court of Common Pleas of Dauphin County (trial court) granting a preliminary injunction filed by Milton Purcell and other members or putative members of the Milton Hershey School Alumni Association Board of Directors (collectively, Challengers) and determining that certain individuals were qualified to serve on the Incumbent Board and had the right to vote in all Board matters that were conducted on June 26, 2005.

This case involves the Alumni Association of the Milton Hershey School.[1] The Association was created 74 years ago and is comprised entirely of orphan graduates. It is a non-profit, tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), incorporated under the laws of Pennsylvania. The Alumni Association is comprised of active members,[2] honorary members[3] and associate members,[4] and is run by an Incumbent Board pursuant to the Alumni Association's By–Laws which were most recently revised in the year 2000. The Incumbent Board is comprised of not less than 15 members, "elected by the active and Honorary members of the Association at large. Each Chapter of the Association shall have the right to elect one (1) member to the Board of Directors pursuant to an election held by the Chapter." Article IV, Section 2 of the By–Laws. "All officers, and any Director Emeritus, shall have the right to vote at any regular or special meeting of the Board of Directors." Article V, Section 2 of the By–Laws.

What eventually culminated in this appeal began with the annual election of officers of the Incumbent Board that was conducted at a Board meeting on November 14, 2004. At that meeting, a Vice President/President Elect, Secretary and Treasurer were elected. Members who voted at that meeting included, among others, three Emeritus Directors and three Chapter Representatives—one from the Honorary Chapter, one from the Homestead Chapter, and one from the Washington, D.C. Chapter. However, during the

---

1. As way of background, Milton Hershey School (MHS) was originally established in 1909 as a charitable institution for orphaned children and later was organized to "receive and admit to the School as many poor, healthy children as may from time to time be determined by the Managers, to the extent, capacity, and income of the School will provide for and shall be adequate to maintain." *In re Milton Hershey School Trust*, 867 A.2d 674, 677 (Pa.Cmwlth.2005).

2. Pursuant to Article II, Section 2 of the By–Laws, "Active Members" are defined as "those persons who shall have paid the prescribed life membership or annual dues of the Association for the current membership year and who received a Milton Hershey School High School diploma or official Milton Hershey certificate of attendance and achievement."

3. Pursuant to Article II, Section 3 of the By–Laws, "Honorary Members" are defined as "individuals of the Milton Hershey School family who have performed some signal service for the Milton Hershey School or the Association, who qualify pursuant to the requirements stated herein, and who are elected as honorary members. Honorary members shall be exempt from paying dues and shall be entitled to all the privileges of the Association except as otherwise provided for in these By–Laws. Honorary members have all voting privileges but may not hold elected Board positions."

4. Pursuant to Article II, Section 2 of the By–Laws, "Associate Members" are defined as "individuals of the Milton Hershey family, including spouses of alumni, former students, current employees and retirees of the school, and such other groups as the Board of Directors may establish from time to time."

meeting, the question was raised as to whether the three Alumni Chapters had held proper elections to elect their Chapter Representatives. The Incumbent Board voted that their elections were improper,[5] and the Chapter Representatives' votes for the officers were disallowed. The Incumbent Board then required the Chapters to conduct proper elections.

At a Board meeting on December 19, 2004, the then-Incumbent Board President announced that the votes of the three Emeritus Directors at the November 14, 2004 meeting were void *ab initio* because those three members had served terms of only one year and their terms had expired. As a result, the votes of the election on November 14, 2004, were recalculated to exclude their votes, and different individuals were voted into the positions of Secretary and Treasurer. At this meeting, the Incumbent Board also voted to reconsider their prior action of disallowing the three Chapter Representatives from voting which was declined. However, the Incumbent Board adopted a motion restoring the voting rights of the Homestead Chapter Representative's Director status for "voting rights for 2005 matters from this point forward." It also adopted a motion restoring the voting rights of the "Honorary Chapter Representative status as voting director for 2005 matters from this point forward, without expanding any powers that do not exist in the ByLaws."

Based on what occurred at these meetings and the outcome of the elections, Challengers filed a six-count complaint against the Incumbent Board on February 1, 2005, essentially alleging that certain classes of Directors were wrongfully deprived of their right to vote for and serve as duly elected officers of the Board. More specifically, Challengers alleged the Incumbent Board:

· Improperly disallowed the votes of three Emeritus Directors because their terms had not expired and they were permitted to continue to serve in their positions until a successor had been selected which never occurred; and

· Improperly disallowed the votes of the Chapter Representatives because the Incumbent Board was without authority to 'remove Chapter Representative Directors' rights to vote.

If they had been allowed to vote at the November 14, 2004 meeting, Challengers contended the outcome of the election would have resulted in different individuals being elected for the positions of Vice President/President Elect, Secretary and Treasurer.

Based on the allegations contained in the complaint, Challengers then filed a *motion for a preliminary injunction* alleging that as a result of the Incumbent Board's misconduct, it was now controlled by an illegally constituted Board that in-

5. In the Incumbent Board's brief, they allege that the Chapter Representatives were elected by sham elections, explaining:

In Washington D.C., the "election" was arranged so that only some Chapter members were permitted to vote, on a ballot where no one was permitted to run against Plaintiffs' choices, i.e., there was only one candidate per position, all others having been excluded from the ballot by Plaintiffs. In the Homestead Chapter, on the night the election was scheduled, Plaintiffs looked out at the over 100 meeting attendees who

had showed up to vote at the scheduled election, realized that they did not have a lock on the vote, and unilaterally declared that Plaintiff Milton Purcell and four other Homestead Chapter members had "just had a special meeting of the Chapter upstairs, and the five of us elected Milt the Chapter Representative." In the Honorary Chapter, the Chapter President and Plaintiff Ethel Campbell declared that no election would be held as it would purportedly violate MHSAA Bylaws, a flatly incorrect claim. (Challenger's brief at 12, n. 2.)

cluded ineligible persons who were carrying out policies that were not consistent with the wishes and views of the majority of the properly selected Directors. Unless enjoined, the Incumbent Board's actions would irreparably harm the members of the Alumni Association. The injunction requested that the trial court enter an order scheduling a hearing and then enter an order to: 1) reverse and vacate the actions taken at the meetings of the Board held on November 14 and December 19, 2004; and 2) restore to the Board of Directors those who were officers of the Board at the beginning of the November 14th meeting.

After a hearing at which two of the Emeritus Directors testified, but no testimony was allowed regarding why the Chapter Representatives' elections were improper, the trial court entered an order dated May 25, 2005, granting the preliminary injunction and directing, *inter alia,* that the Incumbent Board conduct an election of the officers to the Board on June 26, 2005, to vote for a Vice–President/President Elect, Secretary and Treasurer. The trial court further directed that no additional people could be added to the Board and no vacant Board positions were to be filled until an election could be held pursuant to the Alumni Association By–Laws. In an order dated June 6, 2005,[6] the trial court determined that the Honorary, Homestead, and Washington, D.C. Chapters were improperly excluded from voting at the November 14, 2004 meeting because Article X, Section 9 of the By–Laws did not set forth any regulation governing the conduct of the election by the Chapters, the Incumbent Board did not have the specific authority in the By–Laws to disallow elected Chapter Representatives from voting on Board matters, and those Chapters should be permitted to vote at the June 26, 2005 election. Additionally, because the By–Laws were ambiguous as to the qualifications and manner of selection of the Emeritus Directors, they were to be resolved in favor of allowing what had historically taken place to continue; therefore, the rights of the Emeritus Directors to vote were to continue. It is from this order of the trial court that the Incumbent Board has appealed to this Court the entry of the injunction.[7]

## I.

■ For a mandatory preliminary injunction to be granted, the movant must show that: 1) its right to relief is clear; 2) the injunction is necessary to prevent immediate and irreparable harm that could not be compensated by money damages; 3) greater injury would result from refusing the injunction than by granting it: 4) the injunction restores the parties to the

---

**6.** Two days prior to the election, on June 24, 2005, the Incumbent Board filed with this Court an application for stay pending the appeal of the trial court's June 6, 2005 order granting a preliminary injunction and ordering that an election for interim offices of the Alumni Board of Directors be held on June 26, 2005. We denied that application agreeing with the Incumbent Board that "a change in the *interim* leadership of [the Alumni Association] could bring about a discontinuance of this pending legal action, and that should the 'reform' group regain control either by election or judicial determination, their considerable efforts in pursuing the 'reform' litigation could be wasted. Accordingly, pursuant to the authority of Pa. R.A.P. 1733(a), we shall deny the request for stay with conditions to mitigate the potential harms raised by the appellants." (*Milton Hershey School Alumni Association v. Purcell,* Pa.Cmwlth. No. 1198 C.D.2005, filed June 24, 2005, at 3.) (Barry Feudale, S.J.)

**7.** Although one of the Emeritus Directors passed away after the trial court's hearing, the issue of his right to vote was not moot because his vote affected the outcome of the election.

*status quo* that existed immediately before the alleged wrong; and 5) the wrong is manifest and the injunction is reasonably suited to abate it. *City of Philadelphia v. District Council 33*, 528 Pa. 355, 598 A.2d 256 (1991). Where, such as here, a mandatory preliminary injunction is granted, greater scrutiny is applied to the grant than for a prohibitory injunction because it is an extraordinary remedy that should be utilized only in the rarest of cases. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 828 A.2d 995 (2003).

The Incumbent Board contends that the Challengers did not meet any of the criteria necessary to grant a mandatory preliminary injunction. Further, the Incumbent Board argues that the preliminary relief granted does not restore the status quo, and that the relief granted by the trial court was premature and more expansive than any relief requested by Challengers.

## II.

The central issue in this case is whether Challengers established a clear right to relief because, if not, the other criteria fall by the wayside. The Incumbent Board first argues that Challengers never proved that they had a clear right to relief because the trial court erroneously found that there was no basis in the By–Laws for the Incumbent Board to review, revise or reject the election of a Chapter Representative. It further argues the trial court erred because even though the Board had the power to review and disapprove By–Laws of a Chapter upon 30 days notice in advance of a meeting, it could not disallow votes electing a Chapter Representative at a duly held Chapter meeting.[8]

■ Section 5721 of the Non Profit Corporation Law of 1988, 15 Pa.C.S. § 5721,[9] provides that absent a by-law, all

---

**8.** Challengers contend that the only remedy that the Board may pursue is under By–Law Article X, Section 5 which allows the Board within 30 days notice the right to revoke a Charter for any reason. However, that does not answer whether the Board can take less drastic action when the only question involving an otherwise functioning Chapter is the election of the Chapter Representative to the Board. The By–Laws themselves provide limited information regarding a Chapter's election process. Article X, Section 1, provides:

Approval of Association to Organize Chapter. No chapter shall be organized without the prior approval of the Board of Directors, who shall set forth the procedures for organizing same and identify the territory thereof. The designation of such Chapter and identification of territory shall not mandate membership of any Association member in such Chapter.

Article X, Section 3 provides:

Qualifications for Petition to Organize. A Chapter may be organized in any territory in which fifty percent (50%) of the Alumni, or fifteen (15) members, whichever if the least, are active members of the Association.

The Honorary Chapter's By–Laws under Article IV, Section 1, specify: "Election of officers: The officers of the Chapter will be elected at least 30 days prior to the Annual Business Meeting of the Milton Hershey School Alumni Association." The By–Laws of the Homestead and Washington, D.C. Chapters provide similar language and add no more information as to the voting process of the Chapters.

**9.** Section 5726(b) of the Non Profit Corporation Law of 1988, 15 Pa.C.S. § 5726(b), discusses the removal of directors once seated. It provides: "Unless otherwise provided in a bylaw adopted by the members, the board of directors may declare vacant the office of a director if he is declared of unsound mind by an order of court or is convicted of felony, or for any other proper cause which the bylaws may specify, or if, within 60 days, or such other time as the bylaws may specify, after notice of his selection, he does not accept such office either in writing or by attending a meeting of the board of directors, and fulfill such other requirements of qualification as the bylaws may specify."

power to manage the non-profit organization is placed in the Board:

> Unless otherwise provided by statute or in a bylaw adopted by the members, all powers enumerated in section 5502 (relating to general powers) and elsewhere in this subpart or otherwise vested by law in a nonprofit corporation shall be exercised by or under the authority of, and the business and affairs of every nonprofit corporation *shall be managed under the direction of, a board of directors.* If any such provision is made in the bylaws, the powers and duties conferred or imposed upon the board of directors by this subpart shall be exercised or performed to such extent and by such other body as shall be provided in the bylaws. (Emphasis added.)

Under this provision, a board of a non-profit has the inherent power to manage its affairs. While no cases have been found involving non-profits, an analogous situation is in the governmental area where legislative bodies and political parties have been held to have the authority to determine the qualifications of their own members. *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); *Nomination Petition of Jones,* 505 Pa. 50, 476 A.2d 1287 (1984). The inherent power of any non-profit Board to do the same, when the member is not elected to the Board by its own members, is necessary because if the Board did not have that power, anyone could walk in "off the street" and say that he or she was a Director, and the Board would have to seat that person. In the first instance then, the Board has exclusive jurisdiction to determine the qualifications of whether to seat a Director who was elected as a Chapter Representative by its Chapter membership.

■ That discretion, however, is not unfettered. Section 5793 of the Non Profit Corporation Law of 1988, 15 Pa.C.S. § 5793, gives the trial court the authority to hear any complaint of an elected Chapter Representative who has been denied a seat:

**(a) General rule.** Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action.

**(b) Powers and procedures.** The court may make such orders in any such case as may be just and proper, with power to enforce the product of any books, papers and records of the corporation and other relevant evidence which may relate to the issue. The court shall provide for notice of the pendency of the proceedings under this section to all persons affected thereby. If it is determined that no valid corporate action has been taken, the court may order a meeting to be held in accordance with section 5792 (relating to proceedings prior to corporate action).

In this case then, before issuing any order, the trial court was required to hear evidence on why the Incumbent Board refused to seat the elected Charter Representatives and decide whether that reasoning was valid. Having not taken testimony as to why the Incumbent Board took that action, the grant of the mandatory preliminary injunction as to seating Chapter Representatives from the Honorary and Homestead Chapters was improper because no clear right to relief was established.

### III.

■ The Incumbent Board also contends that the trial court erred in determining that the Honorary Chapter Repre-

sentative could vote in the June 26, 2005 Board election because the By–Laws specify that an Honorary member, a person not a graduate of the school, can never be a member of the alumni Board.[10] That determination involved an interpretation of Article II, Section 3 of the By–Laws which provides, in relevant part, that "honorary members have all voting privileges **but may not hold elected Board positions.**" (Emphasis added.) Because it viewed "elected Board positions" as those Board positions elected by other Board members, e.g., President or Secretary, the trial court held that because that term was not defined and was ambiguous, it relied on the past conduct of the Board up until the November 14, 2004 meeting, which was to allow the Honorary members to serve *and vote* on the Board as a representative of the Honorary Chapter, and determined the Honorary Chapter Representative was only prohibited to serve as elected Board officers. It then ordered that the Representative was allowed to vote in the June 26, 2005 election. We believe that the term "elected Board position" could refer to something completely different than Board officers.

Article 5, Section 1 of the By–Laws provides that the officers of the Association shall be elected annually "by the Board of Directors." Article 4, Section 2, then explains the composition of the Board as follows:

> Not less than one-half (1/2) of the members of the Board of Directors shall be elected by the *active and Honorary members* of the Association at large. *Each Chapter of the Association shall have the right to elect one (1) member to the Board of Directors pursuant to an election held by the Chapter.* (Emphasis added.)

Article 4, Section 3 further provides information regarding the eligibility of the Directors stating:

> Any *active member* of the Association shall be eligible to be a member of the Board of Directors, provided, however, that no member of the Association shall be eligible for re-election or appointment to the Board of Directors, except the Secretary, the Assistant Secretary and Counsel, a Chapter Representative, and the Treasurer, until after the lapse of one (1) year from his/her term as a Director unless he/she has served less than thirteen (13) months as a Director. (Emphasis added.)[11]

---

10. Challengers disagree that it was the intent of the drafters of the By–Laws to disallow the Chapter Representatives to vote. They refer us to David Weller's testimony before the trial court that he drafted the By–Laws, and although the language of the By–Laws did not actually change because it was never implemented, it was his intention that the Honorary Members now had the right to vote even though they could not hold office. However, a corporation's by-laws, even a non-profit corporation, establish rules of internal governance which, like contracts and statutes, are construed according to their plain meaning within the context of the document as a whole. "When construing corporate ... by-laws, this Court must use the same rules applicable to the interpretation of statutes, contracts and other written instruments ...

(Citation omitted.) If the bylaw is unambiguous, then is to be construed as it is written and the language is given the force and effect required since the Court does need to interpret it or look to the parties' intent." *Still v. Regulus Group, LLC,* 2002 WL 1060013, at *2, Lexis 9333, at *5 (E.D.Pa. May 29, 2002), *affirmed,* 123 Fed.Appx. 56 (2005). In this case, that means that regardless of David Weller's intent with regard to the Honorary Members ability to vote when he drafted the By–Laws, what matters is the actual language contained within the By–Laws.

11. Additionally, Article 4, Section 6(b)(2) of the By–Laws limits it to "only those *active* members whose dues are paid for the current membership year shall be eligible to vote."

Pursuant to the provisions set forth in Article 4, as well as other Articles in the By–Laws,[12] they speak in terms of "active" members, which are a specifically defined group in the By–Laws, *see* n. 2, rather than in terms of Chapter members. Because only "active members" are allowed to be elected to the Board, that provision makes it clear that while "honorary members" may vote for elected Board members, they cannot serve as elected Board members because only "active members" can serve on the Board of Directors.

However, that does not answer the question of whether the "honorary member" who serves as Chapter Representative to the Board of Directors can vote. Article 4, Section 2 provides that each *Chapter* shall have the right to elect one member to the Board of Directors. Complicating a complicated problem even more is that Article X, Section 3 provides that a Chapter must be composed of "active" members,[13] but we are confronted with the fact that an Honorary Chapter exists.

We believe that when viewing these facts together with incongruities in the language of the By–Laws, there was no clear right to relief based upon a holding that the Honorary Chapter Representative was entitled to vote as a Director. Therefore, the trial court erred in determining that the Honorary Chapter Representative

was entitled to vote for Board officers in the June 26, 2005 election and in all Board matters.

## IV.

■ Regarding whether the Emeritus Directors had a right to vote at the November 14, 2004 meeting and at the June 26, 2005 election, the Incumbent Board contends that the trial court erred in determining that they could vote based on past practice because the By–Laws were ambiguous. The trial court also relied on Section 5724 of the Non Profit Corporation Law of 1988, 15 Pa.C.S. § 5724, and determined that no successor had been found for any of the Emeritus Directors, so they still remained in office. 15 Pa.C.S. § 5724 provides:

**Each director shall hold office until the expiration of the term for which he was selected *and* until his successor has been selected and qualified or until his earlier death, resignation or removal.** Directors, other than those selected by virtue of their office or former office in the corporation or in any other entity or organization, shall be selected for the term of office provided by the bylaws. In the absence of a provision fixing the term, it shall be one year. (Emphasis added.)

12. *See also* Article III, Sections 2, 3 and 4 of the By–Laws regarding Meetings of Membership. Section 2 dealing with Special Meetings of the Members, provides: "Special meetings of the members may be called from time to time by the President of the Association, or by three fourth (3/4) of the Board of Directors, or by petition of not less than five percent (5%) of the *active* members." (Emphasis added.) Section 3, dealing with Quorums for Annual Meetings, provides: "A quorum for the transaction of business at any Annual Meeting of the Association shall consist of not less than thirty-five (35) *active* members present in person." Only *active* members shall participate in the meetings.

(Emphasis added.) Section 4, dealing with Quorums of Special Meetings, provides: "A quorum for Special Meetings of the Association at large shall consist of not less than thirty-five (35) *active* members present in person." (Emphasis added.)

13. Article X, Section 3 provides:

Qualifications for Petition to Organize. A Chapter may be organized in any territory in which fifty percent (50%) of the Alumni, or fifteen (15) members, whichever is the least, are *active* members of the Association. (Emphasis added.)

The Incumbent Board argues that the By–Laws are not ambiguous because the category of Emeritus Directors had purposefully been eliminated in 1999.[14] Additionally, the trial court erred by determining that the two remaining Emeritus Directors could vote until a successor was named because no evidence existed to show that there ever was such a practice.

There is no question the previous By–Laws did, in fact, provide for the election of two Emeritus Directors. Article IV, Section 7 of the 1994 By–Laws, which were submitted into evidence, provided:

> The Board of Directors shall hold an organizational meeting of the Board of Directors within twenty-four hours following the annual election of Directors. **At that meeting, the Board of Directors shall elect the officers of the Association and,** in its discretion, **not more than two Directors Emeritus** and determine the times and places for holding regular meetings of the Board of Directors. (Emphasis added.)

Once elected, pursuant to Article V, Section 2 of the By–Laws, the Emeritus Directors had the right to vote at all the Board meetings. That section provided: "Once elected, all of said Officers shall automatically become members of the Board of Directors. All officers, and **any Director Emeritus, shall have the right to vote at any regular or special meeting of the Board of Directors.**" (Emphasis added.)

Although the Challengers rely on this language as well as the past practice of the Board in arguing that the Emeritus Directors had a right to vote in the November 14, 2004 meeting and the June 26, 2005 election, the By–Laws were revised in 2000 and the language allowing for the election of Emeritus Directors was eliminated. Even though the language in the 2000 By–Laws still remains under Article V, Section 2 regarding the right of Emeritus Directors to vote at all meetings, because no future Emeritus Directors will ever be elected, that language is essentially useless—meaning the Emeritus Directors cannot vote, and we will not consider the past practice of the Board.

## V.

As to the remaining criteria necessary to grant a preliminary injunction, we need not address each one specifically having proved that Challengers' right to relief was not clear. Accordingly, because it is unclear whether the Honorary Chapter Representative and the Homestead Chapter Representative were properly elected and the Incumbent Board failed to provide any reasons for not seating those Directors, and the Emeritus Directors were not entitled to vote at the June 26, 2005 election as ordered by the trial court in its June 6, 2005 order, the decision of the trial court granting the preliminary injunction is reversed.

### ORDER

AND NOW, this *7th* day of *October,* 2005, the order of the Court of Common Pleas of Dauphin County, dated June 6, 2005, is reversed and all actions taken subsequent to June 26, 2005, are vacated unless confirmed by the Appellants.

---

14. They further argue that prior to that time, the By–Laws had only allowed for two Emeritus Directors, not three, and the only reason a third was permitted was to give deference to three elderly and distinguished gentlemen whose past votes did not effect any material Board decisions.