J-A26032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DR. M. MOSHE PORAT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TEMPLE UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION AND RICHARD M. ENGLERT | : | |
| DR. M. MOSHE PORAT | : | |
| v. | : | |
| TEMPLE UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION | : | |
| APPEAL OF: TEMPLE UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION | : | No. 2350 EDA 2021 |

Appeal from the Order Entered November 4, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190404754,
210401182

| | | |
|---|---|---|
| M. MOSHE PORAT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TEMPLE UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION | : | |
| Appellant | : | No. 1278 EDA 2022 |

J-A26032-22

Appeal from the Order Entered November 4, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 210401182

BEFORE:  BOWES, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.:                    **FILED MARCH 16, 2023**

Temple University - of the Commonwealth System of Higher Education (Temple) appeals from the order entered in the Court of Common Pleas of Philadelphia County (trial court) granting the motion for summary judgment of M. Moshe Porat, Ph.D. (Dr. Porat) on his complaint for breach of contract seeking injunctive relief.  The complaint sought an order directing Temple to advance his litigation expenses pursuant to its By-Laws.  Temple argues that it was entitled to discontinue payment of attorneys' fees and expenses at its sole discretion pursuant to an Affirmation and Undertaking (Undertaking) between the parties and there is no independent requirement under the By-laws to provide such advancement.  We reverse and remand.

We take the following factual background and procedural history from the trial court's January 31, 2022 opinion and our independent review of the certified record.

_____

* Retired Senior Judge assigned to the Superior Court.

**I.**

**A.**

Dr. Porat was the Dean of Temple's Fox School of Business (Fox School) from 1996 to 2018. Pursuant to the Fox School By-Laws, Dr. Porat served as its Chief Executive Officer and Chief Academic Officer. The U.S. News & World Reports (USNWR) ranked the Fox School's MBA program number one in the country between 2015 and 2018.

In January 2018, Temple discovered that Dr. Porat and other Fox School employees under his leadership had knowingly provided false information to USNWR that resulted in the ranking for multiple years. After Temple notified USNWR, Fox School lost its ranking and USNWR listed the program as "unranked." According to Dr. Porat, in January 2018, Attorney Michael Schwartz (Attorney Schwartz) of Troutman Pepper was his "advisor."

In February 2018, Temple retained the services of the law firm of Jones Day to conduct a comprehensive review of Fox School's rankings data and processes. On July 9, 2018, Jones Day completed its investigation and concluded that Fox School had intentionally submitted false information, faulting Dr. Porat for his leadership failures. Temple President Richard M. Englert immediately announced the removal of Dr. Porat from his position as Dean of Fox School.

**B.**

After the announcement, the Association of Advanced Collegiate Schools of Business and the Pennsylvania Attorney General's Office contacted Temple to begin their own investigations. In response to requests for employee interviews, Temple's counsel provided approximately ten Fox School employees, including Dr. Porat, with a draft Undertaking and Common Interest/Joint Defense Agreement (JDA) providing legal representation for the investigations.

On September 5, 2018, Attorney Schwartz contacted Temple's counsel, Attorney Catherine M. Recker (Attorney Recker), about his representation of Dr. Porat. She described the substance of the Undertaking and JDA to him, but he did not ask any questions about them, instead acknowledging Dr. Porat's willingness to sign. On September 7, 2021, Attorney Schwartz requested a copy of the Undertaking and JDA so that he could discuss them with Dr. Porat. On September 14, 2021, Attorney Schwartz was provided a copy of the signed Undertaking.

The Undertaking memorialized, in pertinent part, that Dr. Porat "retained. . . counsel to represent [him] in connection with matters related to the. . . falsification of rankings data (the 'Proceedings')," that he was requesting Temple advance him all reasonable attorneys' fees and expenses related thereto, that he would cooperate with the investigation and that he acted honestly, in good faith and in a manner he reasonably believed was in

Temple's best interest at all times and without committing any malfeasance or misfeasance. Pursuant to the Undertaking's terms, Temple could "discontinue the advancement of legal fees and expenses on [Dr. Porat's] behalf in its sole discretion and for any reason." (Undertaking, at 1).[1]

On October 31, 2018, Attorney Schwartz sent Attorney Recker the first invoice seeking advancement of fees and costs. Temple paid that and subsequent invoices for legal services provided by Troutman Pepper, including its January 2021 invoice. However, when Troutman Pepper sent the February 2021 invoice, Temple, for the first time, questioned payment. On March 14, 2021, Temple advised Attorney Schwartz that "Temple is evaluating all its

_____

[1] As the United States Court of Appeals for the Third Circuit has observed:

> Indemnification and advancement are related but distinct avenues by which a business entity pays for an individual's legal expenses. In both, the corporation pays the legal expenses of the officer, director, or other employee when that individual is accused of wrongdoing in the course of performing duties to the corporation. For indemnification, the corporation reimburses the individual for his or her legal expenses once he or she has been successful in the underlying proceeding on the merits or otherwise. For advancement, on the other hand, the corporation pays legal expenses on an ongoing basis in advance of the final disposition of the lawsuit, provided that the individual must repay the amount advanced if it turns out he or she is not entitled to be indemnified—i.e., he or she is not successful on the merits or otherwise in the underlying lawsuit.

***Aleynikov v. Goldman Sachs Grp., Inc.***, 765 F.3d 350, 358-59 (3d Cir. 2014) (citations omitted).

options" with respect to the advancement of Dr. Porat's legal fees and costs pursuant to the 2018 Undertaking. (Complaint, at ¶ 36); (Answer, at ¶ 36).

On March 23, 2021,[2] another of Dr. Porat's attorneys, Stephen G. Harvey (Attorney Harvey),[3] sent correspondence to Temple in which he observed that Temple previously had paid Dr. Porat's attorneys' fees pursuant to the Undertaking, under which Temple could stop payment at its discretion. However, he requested an advancement of Dr. Porat's legal fees and costs pursuant to Section 8.4 of Temple's By-Laws, which he contended foreclosed Temple from not advancing counsel fees. Temple's counsel responded that Dr. Porat was not entitled to an advancement pursuant to the By-Laws because he was not a trustee or officer of Temple and thus did not qualify as a "representative" as defined in Section 8.1. On April 1, 2021, Temple notified Dr. Porat that it was discontinuing the advancement of his legal fees under the Undertaking effective April 9, 2021.

_____

[2] On April 19, 2019, Dr. Porat filed a defamation action against Temple related to the July 2018 announcement regarding his removal as Dean (Defamation Action). On March 23, 2021, Dr. Porat filed a motion to stay the Defamation Action pending resolution of the criminal action in which he stated that the United States' Attorney's Office intended to criminally indict him. On April 16, 2021, Dr. Porat was indicted and charged with conspiracy and wire fraud. On May 12, 2021, the trial court stayed the Defamation Action in its entirety pending the outcome of Dr. Porat's criminal case.

[3] Attorney Harvey was retained to request the advancement of the attorneys' fees and expenses denied Troutman Pepper. (**See** Harvey Correspondence, 3/23/21, at 1).

**C.**

Dr. Porat filed a Complaint against Temple for breach of contract and injunctive relief, arguing that it violated Article VIII of the By-Laws by discontinuing the advancement of legal fees and costs related to litigation stemming from his employment with Temple (the Advancement Action). Temple filed an Answer, New Matter and Counterclaims in which it stated that the monies were not owed under the terms of the Undertaking. It further sought to recover the fees already advanced to Dr. Porat and other monies expended due to his fraudulent actions (the Counterclaims). Dr. Porat filed a motion to stay the Counterclaims filed by Temple seeking reimbursement until the conclusion of the criminal matter, as well a motion for summary judgment in the Advancement Action.

Then began a flurry of motions regarding whether Counterclaims filed by Temple should be stayed. This resulted in a flurry of orders that are not relevant except for the trial court's order of October, 4, 2021 granting Dr. Porat's request to lift the stay of his Advancement Action claims and maintaining the stay in his Defamation Action and Temple's Counterclaims. The trial court further ordered Temple to respond to Dr. Porat's motion for summary judgment in the Advancement Action within fifteen days.

On October 14, 2021, Temple appealed the October 4, 2021 order, arguing the stay order should be reviewed as a collateral order[4] since it was contrary to Pennsylvania law and the principles of fundamental fairness.

While its appeal was pending, Temple filed an answer to the motion for summary judgment and on November 4, 2021, after a hearing, the trial court granted Dr. Porat's motion for summary judgment holding that he was entitled to advancement of expenses for several alternative reasons. It noted that under the provisions of Article VIII of the By-laws, officers and employees who were representatives of Temple were entitled to advancement of fees for any action brought against them while serving in those capacities. It went on to find that he was a Temple officer while serving as Fox School Dean, or in the alternative, he certainly was an officer of "another enterprise," *i.e.*, Fox School.

It then ordered Temple to: (1) "pay the unreimbursed legal fees and expenses incurred to date by Dr. Porat in the federal criminal action;" (2) pay future invoices for Dr. Porat's federal criminal defense in full unless Temple found any portion to be unreasonable, in which case it was to pay the portions it did not dispute; and (3) make reasonable attempts to resolve any disputes

---

[4] "A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa. R.A.P. 313(b).

over the invoices' reasonableness and to otherwise submit the disputes to a master for resolution.[5]

Temple timely appealed the November 4, 2021 order and has complied with the trial court's order to file a statement of errors complained of on appeal. *See* Pa. R.A.P. 1925(b). On December 8, 2021, this Court granted Dr. Porat's motion to quash Temple's appeal of the October 4, 2021 order as interlocutory.

On appeal, Temple challenges the trial court's grant of summary judgment on four bases: (1) the trial court lacked jurisdiction to rule on the summary judgment motion because of the pending appeal of the October 4, 2021 order; (2) the court misinterpreted the University's By-Laws by concluding that Dr. Porat was an "officer" or "representative" entitled to mandatory advancement; (3) the court erred as a matter of law in finding that the Undertaking was not determinative of the parties' rights and obligations; and (4) the trial court erred in denying its request to take limited discovery focused on the issues raised in Dr. Porat's summary judgment motion.

---

[5] On November 29, 2021, a federal jury convicted Dr. Porat of conspiracy and wire fraud for his central role in the rankings scandal. On March 11, 2022, Dr. Porat was sentenced to a term of fourteen months' incarceration, three years' probation and a $250,000.00 fine. His appeal to the Third Circuit Court of Appeals remains pending.

**II.**

We begin with Temple's challenge to the trial court's jurisdiction to enter the order on appeal. Citing to ***Wexford Science & Tech., LLC v. City of Pittsburgh Zoning Bd. of Adjustment***, 260 A.3d 316, 328 (Pa. Cmwlth. 2021) and Rule of Appellate Procedure 1701(c), Temple contends that the trial court lacked jurisdiction to decide the motion for summary judgment while the appeal of the court's October 4, 2021 stay order was pending because the remaining proceedings were "tightly intertwined" with the stay order. Temple's Brief at 52. Acknowledging that we quashed its appeal from that order as interlocutory, Temple nonetheless argues that the trial court should not have proceeded and was without jurisdiction to decide the summary judgment motion.[6]

Rule 1701(a) directs as a general matter that "after an appeal is taken. . . the trial court. . . may no longer proceed further in the matter." Pa.R.A.P. 1701(a). However, Rule 1701(b) provides, in pertinent part, that after an appeal is taken a court may "[p]roceed further in any matter in which a non-

_____

[6] "As a general rule, only final orders are appealable, and final orders are defined as orders disposing of all claims and all parties." ***Am. Indep. Ins. Co. v. E.S.***, 809 A.2d 388, 391 (Pa. Super. 2002); ***see also*** Pa. R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a government unit or trial court."). Generally, we can only address the merits of an appeal taken from "(a) a final order or an order certified as a final order; (2) an interlocutory order [appealable] as of right; (3) an interlocutory order [appealable] by permission; or (4) a collateral order." ***Commerce Bank v. Kessler***, 46 A.3d 724, 728 (Pa. Super. 2012).

appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal. . . ."  Pa. R.A.P. 1701(b)(6).[7]

Pursuant to Rule 1701(c), "when a party has appealed from a **collateral** order, the trial court retains jurisdiction to continue to act on those parts of the case that are unrelated to the collateral matter that is the subject of the appeal."  ***Commonwealth v. McClure***, 172 A.3d 668, 698-99 (Pa. Super. 2017) (emphasis added); ***see also Wexford***, 260 A.3d at 328, n.7 ("But, when the remaining proceedings in the trial court are 'tightly intertwined' with the **collateral** matter that is on appeal, the trial court may not take any action on those intertwined matters until the appeal is concluded.") (quoting ***McClure***, 172 A.3d at 699).

We agree with the trial court that it had jurisdiction to consider Dr. Porat's motion for summary judgment pursuant to Rule 1706(b)(6) because

_____

[7] Rule 1701(b) also provides the following exceptions, which are not argued to be applicable here.  The trial court may:  (1) "[t]ake such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal *in forma pauperis*, grant *supersedeas*, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding"; (2) "[e]nforce any order entered in the matter, unless the effect of the order has been superseded. . . ."; (3) grant reconsideration of the order which is the subject of the petition if a timely motion for reconsideration is filed and the trial court enters a timely order expressly granting reconsideration; (4) "[a]uthorize the taking of depositions or the preservation of testimony where required in the interest of justice"; and (5) "[t]ake any action directed or authorized by an appellate court."  Pa. R.A.P. 1701(b)(1)-(5).

the October 4, 2021 order was a non-appealable interlocutory order. The order was not a collateral order pursuant to Rule 313, nor was it "tightly intertwined" with the motion for summary judgment, rendering **Wexford** inapplicable.

Temple also relies on **Weise v. Goldman**, 323 A.2d 31 (Pa. Super. 1974), for the proposition that the trial court was not permitted, in the first instance, to decide if the October 4, 2021 order was interlocutory, thereby allowing it to proceed pursuant to Rule 1701(b)(6). **Weise** was decided before the enactment of Rule 1701(b)(6), and the subsequent case law has made clear that a trial court is permitted to proceed if it determines that the order is interlocutory, without the appellate court making such a ruling in the first instance. **See Mahonski v. Engel**, 145 A.3d 175, n.3 (Pa. Super. 2016) ("Although the trial court continued to resolve Appellants' claims while an appeal was pending in this Court, the trial court was not divested of its jurisdiction upon the filing of this notice of appeal as Appellant sought review of a non-appealable interlocutory order."); **Commonwealth v. Calloway**, 675 A.2d 743, 747 (Pa. Super. 1996) (finding, pursuant to Rule 1701(b)(6), that trial court had jurisdiction to enter an order after appeal from interlocutory order had been filed).

Based on the foregoing, the trial court had jurisdiction to decide the summary judgment issue after Temple appealed the interlocutory October 4,

2021 order. We now turn to substantive arguments regarding Dr. Porat's counsel fees, which he contends were payable under Temple's By-Laws.

### III.

As a preliminary matter, we observe that non-profit corporations like Temple are statutorily authorized to adopt by-laws providing for mandatory advancement of litigation expenses for "representatives" who are sued for alleged wrongful acts they deny. *See* 15 Pa.C.S. § 5745.[8] An "[a]dvancement action is a summary proceeding" in which the scope is limited to determining "the issue of entitlement according to the corporation's advancement

_____

[8] The Associations Code provides:

> Expenses (including attorneys' fees) incurred in defending any action or proceeding referred to in this subchapter may be paid by a nonprofit corporation in advance of the final disposition of the action or proceeding upon receipt of an undertaking by or on behalf of the **representative** to repay the amount if it is ultimately determined that he is not entitled to be indemnified by the corporation as authorized in this subchapter or otherwise. Except as otherwise provided in the bylaws, advancement of expenses shall be authorized by the board of directors.

15 Pa.C.S. § 5745 (emphasis added). The Code defines "representative" as follows:

> When used with respect to an association, joint venture, trust or other enterprise, a person occupying the position or discharging the functions of a director, officer, partner, manager, trustee, fiduciary, employee or agent, regardless of the name or title by which the person may be designated. The term does not imply that a director, as such, is an agent of a corporation.

15 Pa.C.S. § 102.

provisions and not to issues regarding the movant's alleged conduct in the underlying litigation." *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005) (footnotes omitted).

In reviewing a trial court's interpretation of by-laws, we "must use the same rules applicable to the interpretation of statutes, contracts and other written instruments." *Purcell v. Milton Hershey Sch. Alumni Ass'n.*, 884 A.2d 372, 379 n.10 (Pa. Cmwlth. 2005) (citation omitted).[9]  To interpret a contract, "the entire contract should be read as a whole. . . to give effect to its true purpose." *Commonwealth v. UPMC*, 129 A.3d 441, 464 (Pa. 2015) (citation omitted).  It is well-settled that a contract "must be construed in accordance with the terms of the agreement as manifestly expressed, and the accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 186 (Pa. Super. 2013) (citation omitted).

> When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding.  This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

---

[9] "This Court is not bound by decisions of the Commonwealth Court.  However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." *Petow v. Warehime*, 996 A.2d 1083, 1089 (Pa. Super. 2010), *appeal denied*, 12 A.3d 371 (Pa. 2010) (citation omitted).

*Id.* (citations omitted).

Furthermore, "a word used by the parties in one sense is to be interpreted as employed in the same sense throughout the writing in the absence of countervailing reasons such as thwarting the intent of the government." ***UPMC***, 129 A.3d at 464 (citation omitted).

**A.**

Temple contends that the provisions of the By-Laws under which Dr. Porat is seeking advancement of fees are not enforceable because the Undertaking provided that Temple had the absolute discretion to discontinue Dr. Porat's advancement payments. It argues that the trial court's order renders the Undertaking a legal nullity.

Dr. Porat counters that the Undertaking is a separate agreement that does not preclude a request for mandatory advancement of counsel fees under Article VIII of the By-Laws. He asserts that the Undertaking granted Temple the right to cease advancement paid *pursuant to the Undertaking* at its discretion, but this did not include the right to deny payment to him under Section 8.4 of the By-Laws. He maintains that the By-Laws mirror the language of 15 Pa.C.S. § 5746(a) and speak directly to a situation in which an individual has separate rights to advancement under more than one contract.

It is undisputed that the Undertaking provided Dr. Porat with "advance reasonable and customary attorney's fees and expenses associated with" Attorney Schwartz's representation in the Proceedings. (Undertaking, at 1).

Pursuant to the Undertaking's unambiguous terms, Dr. Porat "expressly agreed and understood that the University may discontinue the advancement of legal fees and expenses on [his] behalf in its sole discretion and for any reason." (*Id.*).

However, Section 8.5 of the By-Laws, titled "Supplementary Coverage," provides in pertinent part:

> The indemnification and advancement of expenses provided by or granted pursuant to this Article VIII **shall not be deemed exclusive of any other rights to which an individual seeking indemnification or advancement of expenses may be entitled under the Act or any bylaw**, vote of the disinterested Trustees, **agreement or otherwise**, both as to action in his or her official capacity and as to action in another capacity while holding that office.

(University By-Laws, at § 8.5) (emphases added);[10] *see* 15 Pa.C.S. § 5746(a).

While the Undertaking was an agreement to advance counsel fees, the trial court found that it was an additive remedy to the mandatory advancements provided for under this provision of Temple's By-Laws. This conclusion is consistent with the By-Laws, which specifically state that an

---

[10] While we observe that Subsection (A) of Section 8.5 provides that no **indemnification** may be made to a party to the extent "the act or failure to act giving rise to the claim for indemnification is determined by a court to have constituted self-dealing, willful misconduct, or recklessness[,]" as stated previously, indemnification is paid after the conclusion of litigation, while the advancement at issue here is paid on an ongoing basis while the litigation is pending, with the understanding that the individual will pay the money back if he is unsuccessful. *See Aleynikov*, 765 F.3d at 358. Therefore, subsection A is not relevant to our review.

individual's mandatory right to advancement under the By-Laws is not exclusive to any other right. In other words, the By-Laws specifically contemplated that a party may have different advancement rights under more than one agreement.

Pursuant to the Undertaking's unambiguous terms, Temple could and did cease paying advancement under the Undertaking at its discretion. However, it was still required to comply with the equally unambiguous terms of the By-Laws that required advancement if the individual was one of the persons denominated as entitled to advancement and indemnification. We agree with the trial court that just because Temple exercised its right to cease payment under the Undertaking, it could not absolve itself of its duty to pay advancement under Sections 8.4 and 8.5 of the By-Laws, which expressly provided for advancement even if there are other sources from which counsel fees could be advanced.

Next, we consider whether Dr. Porat was entitled to advancement of counsel fees under Temple's By-Laws.

**B.**

Several provisions of the University By-Laws govern the indemnification and advancement of counsel fees. Section 8.2 of the By-Laws regarding indemnification for third party and derivative actions provides:

> The University shall indemnify **any Trustee, officer, employee or agent of the University** who was or is a **representative of the University** and who was or is a party (which includes giving testimony or similar involvement) or is threatened to be made a

party to any threatened, pending or completed action or proceeding, whether civil, criminal, administrative or investigative, formal or informal (including an action or proceeding by or in the *right* of the University), **by reason of the fact that he or she was or is a representative of the University**, against expenses **(including reasonable attorneys' fees**), judgments, fines and amounts paid in settlement actually and reasonably incurred by him or her in connection with the action or proceeding.  If a representative is not entitled to indemnification for a portion of any liabilities to which he or she may be subject, the University nonetheless shall indemnify him or her to the maximum extent permitted by law and this Article for the remaining portion of the liabilities.

(University By-Laws, at § 8.2) (emphasis added).

Section 8.1 defines "representative" for the purposes of Article VIII:

[A]ny Trustee or officer of the University or an individual serving at the request of the University as a director, officer, partner, fiduciary, or trustee of another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust, or other enterprise.

(***Id.*** at § 8.1).[11]

Section 8.4 specifically deals with the advancement of fees during the

pendency of the litigation of the covered party.  It provides:

The University shall pay expenses (including reasonable attorneys' fees) actually and reasonably incurred in defending any action or proceeding referred to in **Section 8.2** in advance of the final disposition of the action or proceeding upon receipt of any undertaking by or on behalf of the representative to repay the amount if it is ultimately determined that he or she is not entitled to be indemnified by the University as authorized in this Article VIII or otherwise.

---

[11] This definition of "representative" is much more limited than the definition contained in the Associations Code.  ***See*** footnote 8, *infra*.

(*Id.* at § 8.4) (emphasis added).

Temple first contends that Dr. Porat is not entitled to advancement of counsel fees under the University By-Laws because those provisions only apply to high-ranking officers listed in Section 7.1 of the By-Laws.[12]  It acknowledges that the Board may appoint other officers, but argues there is no evidence that the Fox School Dean was a position with "officer" status or that Dr. Porat was otherwise made a University officer.

We agree that the trial court erred in finding that Dr. Porat was a Temple officer entitled to advancement of counsel fees.  Because the definition of "officer" provided in Section 7.1 applies to Section 8.1, and Dr. Porat is not the "Chair of the Board, a Vice-Chair of the Board, a President, a Secretary[,] a Treasurer[,]. . . Vice President[], a Provost, [or] a University Counsel," he is not a defined officer of Temple entitled to advancement of fees.  "Dean" is

_____

[12] Section 7.1 of the University By-Laws provides that:

> The officers of the University shall include a Chair of the Board, a Vice-Chair of the Board, a President, a Secretary and a Treasurer. The officers also may include one or more Vice Presidents, a Provost, a University Counsel, one or more Assistant Secretaries, one or more Associate or Assistant Treasurers, and such other officers as the Board may determine from time to time. The same person may hold any number of offices. Except as otherwise provided in these Bylaws, the Board may appoint officers at any meeting of the Board. Except for the Chair and Vice-Chair of the Board and the President, upon appointment by the Board, all officers shall serve at the pleasure of the President, subject to consultation with the Board.

(University By-Laws, at § 7.1).

simply not one of the enumerated positions set forth in the University By-Laws. While the Board is entitled to denominate other positions or individuals as "officers," there is nothing in the record that reflects the Board did so in this instance. The trial court erred in holding that Dr. Porat was entitled to advancement of fees based on its incorrect conclusion that he was an "officer" within the meaning of Section 8.2.

However, that does not end our inquiry. The trial court alternatively found that Dr. Porat, as Dean, was a "representative" under Section 8.1 because even "if Dr. Porat was not an officer of the University. . . he would be an officer of 'another enterprise', that being Fox School of Business." (Trial Ct. Op., 1/31/22, at 15). Even assuming that Dr. Porat is a Temple employee, who served as Fox School Dean at the request the University, and that the Fox School is an "enterprise,"[13] Dr. Porat still does not meet the requirements of Section 8.1 to be a "representative." Under that section, Fox School must be an "other enterprise," separate and apart from the University.[14] (University By-Laws, at § 8.1).

_____

[13] Black's Law Dictionary defines "enterprise" as "[a]n organization or venture, esp. for business purposes." *See* Enterprise, Black's Law Dictionary (11th ed. 2019).

[14] Fox School has its own By-Laws that mainly involve the manner in which the University consults with the Fox School faculty, participates and is consulted about the affairs of the Fox School. The Fox School's By-Laws were originally approved by the President in 2002, and in 2019, were revised and approved by an assembly of Fox School faculty members. Temple does not
*(Footnote Continued Next Page)*

The types of organizations denominated under Section 8.1 all involve a separate governing structure from that of the University, namely, "another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust, or other enterprise." (University By-Laws, at § 8.1). The individual serving is not serving as a director, officer, trustee or fiduciary of the University but is serving as an officer, trustee or fiduciary of another, different organization. For example, an employee serving as a "director" or "trustee" of "another" for-profit or non-profit board would have to be nominated to the board of that organization in accordance with its articles of incorporation or by-laws. Similarly, an "officer" would have to be appointed according to the by-laws of that for-profit or non-profit. As to "enterprise,"

_____

suggest those By-laws were not validly promulgated or that the President does not have the power to appoint the Dean. If a Fox School By-Law or action pursuant to those By-Laws conflicts with University Policies, by-laws and collective bargaining agreements, the By-Law or action is superseded. "University Policies" refers to any action taken by the Temple University Board of Trustees or the President of Temple University. (**See generally** Fox School By-Laws, Article I).

Regarding Fox School governance, the By-Laws provide that the University President "appoints the Dean of the Fox School. . . in conformance with such Dean Search Guidelines as the President may from time to time promulgate." (**Id.**, Article II.C). The Dean is accountable to the President and must follow all University Policies and directions. (**Id.**, Article II.D). The Dean of the Fox School is its chief executive officer and the chief academic officer and is responsible for supervising the budget and administration pursuant to University Policies. (**Id.**, Article II.E, F & H). The Dean also may appoint, subject to University Policies, associate deans, assistant deans, and other academic and administrative personnel. (**Id.**, Article II.H).

which is the catchall of business organizations, the individual serving in some fiduciary capacity is governed by the internal or contractual rules under which that enterprise operates. In all cases, they are not the articles, by-laws, or internal or contractual rules of Temple.

What is clear, then, is that as Dean of the Fox School, Dr. Porat is not serving some "other enterprise." Fox School is not separate and apart from Temple, but is merely one of its constituent parts that is, per its own by-laws, subject to the direction and control of the President and Board of Trustees of the University. Accordingly, Dr. Porat does not fall within any of terms under the definition of "representative" in Section 8.1 and is not entitled to advancement of costs under Section 8.2.[15]

Order reversed. Case remanded. Jurisdiction relinquished.

---

[15] Temple also argues that Dr. Porat's federal court conviction requires that he pay back any money advanced to him. The trial court did not address the University's entitlement to recapture counsel fees when it granted summary judgment, having stayed Temple's counterclaim seeking reimbursement. This issue is waived on appeal because Temple failed to raise the issue of the propriety of the trial court staying of that counterclaim in its Rule 1925(b) statement. Even if it had raised that issue and we decided it in its favor, the result would be the same as the result here - remanding the case to consider Temple's counterclaim. Temple also claims that the trial court erred in prematurely granting summary judgment without allowing necessary discovery. We need not address that issue because of the way we have resolved this appeal.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 3/16/2023*